*Court of Common Pleas, Dauphin County, April 9th, 1866.*

FORSTER *v.* FORSTER'S EXECUTORS.

A citation to settle an account will not be issued against an assignee for the benefit of creditors after more than twenty years have elapsed from the date of the assignment.

Any presumption that might arise against the assignee from a settlement between him and the assignor, in which it is stated that all matters of account embraced in the deed of assignment are left out and excluded, will be rebutted by the fact that the assignor was discharged under the bankrupt and insolvent laws, and in the schedule of his property made no mention of any money coming to him from his former assignee; and the fact that the latter lived twelve years after the above-mentioned writing, and the citation was not asked for until after his death.

BY THE COURT.—On June 13th, 1835, John E. Forster executed to John Forster a deed of assignment, under the acts of Assembly then in force, for the use of certain creditors of the assignor named in the deed, and should there be a surplus after paying the debts, the same should inure to his own use. On December 13th, 1864, John E. Forster filed his petition for a citation to John Forster's executors, asking that they shall be required to settle an account of the trust funds. On November 29th, 1864, a citation was awarded by the court. An answer was filed on January 31st, 1865, by the executors denying the right of the petitioner to call for a settlement under the circumstances. Something over twenty-nine years have intervened between the time of executing this assignment and the application for the citation; and as this is not one of those technical and continuing trusts, which fall within the proper and peculiar jurisdiction of a court of equity, it will be presumed to be fully complied with and the duties of the trustee to have been performed, from the lapse of time alone, unless the delay in requiring an account or calling for a settlement has been fully explained,

[Forster *v.* Forster's Executors.]

or some other satisfactory proof made, which will repel the legal presumption (1 Parsons, 170, 70, 482; 2 H. 531; 7 Ibid. 138; 2 Parsons, 258; 1 Watts, 275). The law generally presumes every kind of obligation settled and discharged after twenty years, unless that presumption be satisfactorily repelled, and will not permit an executor, administrator, assignee, or other trustee to be coerced to make a settlement after that time. This is necessary for the peace and repose of society. These general principles are not denied by the petitioner, as we understand; but he relies on a writing executed between him and the trustee, made on October 9th, 1857, to repel the legal presumption. The material part of the agreement, so far as relates to the deed of trust, is set forth in a few words. It states that the parties have settled all matters of account existing between them from June 13th, 1835, the date of the deed of assignment, to November 8th, 1848, the date of a certain bill of sale of goods in a store at Carlisle, and the amount of indebtedness due to John Forster, on March 14th, 1850, to be $3611.81, with interest thereon till paid. "All matters of account embraced in the deed of assignment above mentioned, and all matters of account existing between us after the bill of sale mentioned, are left out and excluded." John Forster then goes on to give to John E., in trust for the wife of the latter, a store of goods; a value is fixed on those goods, which is to bear interest from the date of the deed of trust.

On October 13th, 1851, a written agreement to pay the debt, $3611.81, is given by John E. to John Forster, reciting many of the facts spoken of in their mutual contract, signed by both, as already cited in part, but not adding to the strength thereof. Does this agreement of October 9th contain a promise to pay, or any expression from which one could be implied? Does it admit that anything was due from the trustee either to the *cestui que trust* or his creditors under the deed? Does it declare or imply that the trust had not been executed, the duties performed, and an account thereof settled? It certainly does declare that the accounts under the deed of trust, as well as those since the bill of sale of 1848, are not embraced in that settlement, whether in any other is not stated, but as they are placed on the same footing as those arising since the bill of sale in 1848, we might imply that no account had been rendered. Therefore, we are obliged to take into consideration the other facts proved, in order to ascertain whether the executors of John Forster can now be called upon to render an account of that trust.

On December 18th, 1841, John E. Forster presented his petition to the Court of Common Pleas of this county for the benefit of the law for the relief of insolvent debtors, and was discharged as such by order of the court on January 17th, 1842, having

executed an assignment of all his property, rights, and claims for the benefit of his creditors. In that proceeding he made no mention of this claim, does not return John Forster as his debtor, or state that he has funds in his hands for the benefit of the petitioner or his creditors. On the contrary he there returns under oath that he owes John Forster by judgment $4230, and for moneys paid at various times $780. This, too, after sufficient time had intervened to have enabled the debts to have been collected, the property sold under the deed of trust, and the creditors named to have been paid in whole or in part, so far as the fund would reach. In that deed John Forster was returned as a creditor to the amount of $129, and by the time of the insolvent application it had increased to $5010. It is true John Forster was returned as an indorser for John E., as stated in the deed of trust, to the amount of $6200. But to meet that indebtedness mention is made of some $9400 of collaterals in the hands of the creditor. It mattered not whether the creditors named in the deed had or had not been paid, or whether there was or was not a surplus. The trust should have been referred to in the assignment, unless, indeed, the whole were settled, and the accounts squared, in which case no return need have been made, and as the schedule of property and debts was made under oath, we are bound, as against John E., to presume that such was the case, and he is estopped from averring the contrary, and it must be borne in mind that this settlement is not demanded by the creditors, but by the assignor himself. Besides, though not returned, nor any mention made of the fund in the hands of the trustee, it passed by the assignment, and the proper person to demand an account is the assignee in insolvency. Again, in April, 1842, we find that John E. Forster presented his petition to the District Court of the United States for a discharge under the bankrupt laws, in which no mention is made of any claim in the hands of John Forster under the deed of trust, but in it the latter is returned as a creditor to the amount of $780 on a book account. The proceedings show that this petitioner was regularly sworn to his petition and schedule, and discharged as a bankrupt; but it does not appear that he executed an assignment, though it is more than probable that he did, as he returns assets to the amount of $2500.

To overcome the effect of these two gross omissions to make a return of a claim under the deed of assignment the evidence of a mistake should be clear and satisfactory, but it is in no wise accounted for in any part of the case, except by the vague expressions used in the agreement of October 9th, 1851. There is a further very powerful equitable objection to enforcing the demands of John E. Forster's petition. The settlement was made and obligation given to John Forster in October, 1851.

[Forster *v.* Forster's Executors.]

The latter died upwards of twelve years thereafter, and during all of that time no request or demand was ever made on him for a settlement, but, on the contrary, between 1857 and April, 1863, we find John E. very frequently borrowing money from John Forster, and giving his note for the sums borrowed. This did not indicate that the former considered the latter his debtor. If an account was to be demanded of this ancient transaction, it should have been done during the lifetime of John Forster, who would doubtless have been much better able to explain how each item was disposed of, and what debts were discharged, with the amounts thereof, than can be expected from his executors. Where a party lives for a long time after a transaction, during which he might have been called on for a settlement, a court of equity will take that into consideration in addition to the lapse of time before (17 Ves. 87).

Nothing can insure the interposition of a court of equity but conscience, good faith, and reasonable diligence. The court from motives of public policy refuses to interpose in favor of stale claims (1 Howard, 168, 189; Smith *v.* Clay, 3 Bro. Ch. 639, note; 2 Scho. & Lef. 636; 1 Story Eq. Jur., s. 529, and the cases there cited; 1 Fonbl. Eq. B. 1, ch. 4, s. 27). And our own books of reports are full of decisions to the same effect. There is no doubt that, as a general rule, twenty years must intervene in cases of this kind between the execution of the deed of assignment and the demand for a settlement, before either a court of law or equity will presume that all has been arranged and discharged, but a less time attended with circumstances has, ever since the days of Lord Mansfield and perhaps long before, been permitted to raise the presumption. Had John E. Forster, in 1851, when the article was entered into, demanded a settlement in his own favor under the deed of trust, I am strongly inclined to believe that the period of sixteen years, strengthened by the failure to make any mention of the claim in either of his applications for the benefit of the insolvent and bankrupt laws, would have operated as a bar. The creditors, if not paid, could have required an account; he could not; and although there are expressions used from which it might be implied that the business remained open, yet, whether left out for the benefit of the one or the other, does not appear from the writing. We cannot permit that equivocal statement to throw all open now, especially when we take into consideration the very considerable time that John Forster lived afterwards without being asked to account. We are irresistibly led to the conclusion that this proceeding was instituted on account of the very considerable advancements charged against John E. Forster in his father's will, from which he found himself cut out from any participation in the estate. After a very careful consideration of the whole course of dealing between these

[Shoemaker *v.* Murray.]

parties, as presented to the court by the petition, answer, and evidence, we are constrained to say that it is not a proper case for judicial interference; we must treat all the matters between father and son as settled, and dismiss the citation at the cost of the petitioner.

*Fleming, for plaintiff.*

*Briggs, for defendant.*